# Illinois Official Reports

## Appellate Court

---

### *Village of Arlington Heights v. Pappas*, 2016 IL App (1st) 151802

---

| | |
|---|---|
| Appellate Court Caption | THE VILLAGE OF ARLINGTON HEIGHTS, a Municipal Corporation, Plaintiff-Appellant, v. MARIA PAPPAS, as County Treasurer of Cook County, Defendant and Third-Party Plaintiff-Appellee (the County of Cook, the Forest Preserve District of Cook County, Wheeling Township, Arlington Heights School District No. 25, Township School District 214, Harper Community College District 512, the Arlington Heights Park District, the Metropolitan Water Reclamation District of Greater Chicago, and the Northwest Mosquito Abatement District, Third-Party Defendants-Appellees). |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-1802 |
| Filed | November 10, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2013-CH-23790; the Hon. Franklin U. Valderrama, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Holland & Knight, LLP, of Chicago (Christopher J. Murdoch and Karl D. Camillucci, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Donald J. Pechous, Benjamin R. Bilton, Alan J. Spellberg, Joseph Alexander, and Andrea N. Williams, Assistant State's Attorneys, of counsel), for appellee Maria Pappas. |

Franczek Radelet, P.C., of Chicago (Ares G. Dalianis and Jennifer A. Smith, of counsel), for other appellees.

Panel        JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Presiding Justice Hoffman and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1        The Village of Arlington Heights (Village) appeals an order of the Cook County circuit court granting summary judgment in favor of the Cook County Treasurer (Treasurer) on the Village's declaratory judgment action and finding that the Treasurer had the authority to seek repayment from the Village for refunds the Treasurer made to taxpayers of certain incremental tax payments received by the Village during the lifetime of two tax increment financing (TIF) districts. In so finding, the circuit court rejected arguments that the Treasurer lacked the authority to seek repayment and that third-party taxing districts were responsible for a *pro rata* share of the repayment to the Treasurer of the refunds. We affirm.

¶ 2                    I. Background Information Regarding Property Tax Collection and TIFs

¶ 3        The Treasurer is the county collector for Cook County (35 ILCS 200/19-35 (West 2012)) and is responsible for collecting all property taxes for and distributing tax revenue to the hundreds of local taxing districts located within Cook County. 35 ILCS 200/20-85 (West 2012). The process the Treasurer must follow when collecting and distributing property tax revenue varies depending on whether a TIF district has been established.

¶ 4        When a TIF district has not been adopted, the Property Tax Code establishes the process the Treasurer must follow. Pursuant to the Property Tax Code, all taxing districts, other than a school district subject to the authority of a Financial Oversight Panel pursuant to article 1H of the School Code (105 ILCS 5/1H-15 (West 2012)), must certify the amounts of their annual property tax levy to the county clerk. 35 ILCS 200/18-15(a) (West 2012). The county clerk determines the total equalized assessed value (EAV) of real properties located within each taxing district and calculates the appropriate tax rate on this EAV to produce the certified amount of the property tax levy. 35 ILCS 200/18-45 (West 2012). The Treasurer collects the taxes, deposits them in the so-called Class A fund (55 ILCS 5/3-11003 (West 2012)), and distributes to each taxing district its respective share of property tax revenue in proportion to the rates established by the county clerk. 35 ILCS 200/18-150 (West 2012). The property tax revenue is deposited in the taxing districts' respective "general corporate funds" to be used for general corporate purposes.

¶ 5        When there is a TIF district, the Tax Increment Allocation Redevelopment Act (TIF Act) (65 ILCS 5/11-74.4-1 (West 2012)) applies. The TIF Act was adopted by the legislature "to

provide municipalities with the means to eradicate blighted conditions by developing or redeveloping areas so as to prevent the further deterioration of the tax bases of these areas and to remove the threat to the health, safety, morals, and welfare of the public that blighted conditions present." *Board of Education, Pleasantdale School District No. 107 v. Village of Burr Ridge*, 341 Ill. App. 3d 1004, 1010 (2003) (citing 65 ILCS 5/11-74.4-2(a), (b), (c) (West 1994)). Under the TIF Act, after notice and a hearing, a municipality may adopt an ordinance establishing a TIF district for 23 years, approving a redevelopment plan, and designating redevelopment project areas within that TIF district (65 ILCS 5/11-74.4-3.5, 11-74.4-4 (West 2012)), and the municipality may pass an ordinance adopting tax increment allocation financing for the 23-year life of the TIF district. 65 ILCS 5/11-74.4-8 (West 2012). If the municipality passes an ordinance adopting tax increment allocation financing, the county clerk determines the total value for all properties within the redevelopment project area inside the TIF district, referred to as the total "initial equalized assessed value" (initial EAV). 65 ILCS 5/11-74.4-9(a) (West 2012). Each year thereafter while the TIF district is effective, the county clerk determines the actual current EAV of these properties. 65 ILCS 5/11-74.4-9(c) (West 2012). If the actual EAV of these properties exceeds the initial EAV, then that incremental increase is taxed. The Treasurer collects the tax on the incremental increase in property value (tax increment) through the Class A fund and pays all of it to the municipal treasurer, who deposits it in a "special tax allocation fund" to pay the redevelopment project costs and any obligations incurred in the payment thereof. 65 ILCS 5/11-74.4-8(b) (West 2012). None of the tax increment goes to the other taxing districts in the TIF district. In effect, the tax increment, some of which normally would have been distributed to the other taxing districts in the absence of a TIF district, is diverted in total to the municipality for the 23-year lifetime of the TIF district.

¶ 6 The Treasurer collects and distributes to the other taxing districts in the redevelopment project area only the taxes on the initial EAV (or on the current EAV, whichever is lower) for the 23 years the TIF district is in effect, and thus the amount of property tax dollars that the taxing districts (other than the municipality) get from the TIF district is effectively frozen for 23 years. 65 ILCS 5/11-74.4-8(a) (West 2012).

¶ 7 At the expiration of the TIF district's 23-year lifetime, the tax increment is no longer paid only to the municipality for deposit in the special tax allocation fund but is distributed to all the taxing districts in the former redevelopment project area *pro rata* for use in their general corporate funds pursuant to the Property Tax Code. 35 ILCS 200/18-150 (West 2012).

¶ 8 II. The Facts of This Case

¶ 9 The Village established TIF District One in downtown Arlington Heights, south of the Northwest Highway, in 1983, and established TIF District Two in downtown Arlington Heights, north of the Northwest Highway, in 1986. The Village developed and redeveloped various properties within those TIF districts, including three public garages, Harmony Park, a train station, a performing arts theater, and older buildings in the downtown area. The tax increment attributable to the increase in property values in TIF District One over 23 years was approximately $45 million, while the tax increment attributable to the increase in property values in TIF District Two over 23 years was approximately $29 million. Pursuant to the TIF Act, the Village treasurer received 100% of those tax increments and deposited

them in the special tax allocation funds, and they were used to pay for the improvements to the properties.

¶ 10    Meanwhile, owners of certain taxable real property within TIF District One and TIF District Two filed successful tax objections with the Cook County Board of Review to the assessed value of their properties during the 23-year lifetimes of the TIF districts. As a result of the successful tax objections, the circuit court of Cook County and the Illinois Property Tax Appeal Board (IPTAB) ordered the Treasurer to issue refunds to these taxpayers in the amounts of the tax increments that the taxpayers overpaid plus interest. The Treasurer issued the refunds to comply with the orders of the court and the IPTAB and to prevent the accrual of statutory interest. See 35 ILCS 200/23-20 (West 2012).

¶ 11    After paying these refunds out of the Class A fund, the Treasurer sought reimbursement from the Village. The Treasurer alleges that for refunds made during the 23-year statutory lifetime of TIF Districts One and Two, she reimbursed herself by deducting the refund amounts from the next tax increments that were being distributed to the Village for deposit into the special tax allocation funds pursuant to the TIF Act. However, some of the refund orders for over-assessments of tax increments during the TIF districts' lifetimes were entered after the expiration of the TIF districts, when the Property Tax Code, and not the TIF Act, controlled the distribution of the tax increments. Under the Property Tax Code, the tax increments were distributed to all the applicable taxing districts *pro rata* for use in their general corporate funds rather than distributed in their entirety to the Village for deposit in the special tax allocation funds. See 35 ILCS 200/18-150 (West 2012). As the special tax allocation funds were no longer receiving new tax increments, the Treasurer looked to the Village for the monies necessary to reimburse her for the tax increment refunds she made after the TIF districts' 23-year statutory lifetimes (sometimes referred to herein as the post-TIF refund amounts).

¶ 12    On June 4, 2012, the Treasurer sent a letter to the Village's Finance Director requesting that the Village reimburse her for her post-TIF refund payments.

¶ 13    The Village then filed a complaint seeking a declaration that it was not liable to repay the Treasurer for the post-TIF refund payments, or, in the alternative, that the burden of repaying the Treasurer was shared by all the taxing districts located within the Village's TIF districts. The complaint also sought to enjoin the Treasurer from deducting the amount of the post-TIF refunds from any distribution of general property tax revenue due and owing to the Village under the Property Tax Code. The Treasurer filed her answer and counterclaim seeking a declaration that the Village was liable to repay the post-TIF refunds made to the taxpayers in the Village's TIF districts. The Treasurer also sought recovery against the Village under the doctrine of unjust enrichment.

¶ 14    The Treasurer subsequently filed a third-party complaint against various taxing districts located in the boundaries of the Village's TIF districts: County of Cook, the Forest Preserve District of Cook County, Wheeling Township, Arlington Heights School District No. 25, Arlington Heights Township High School District 214, Harper Community College District 512, the Arlington Heights Park District, the Metropolitan Water Reclamation District of Greater Chicago, and the Northwest Mosquito Abatement District (third-party defendants). The third-party complaint sought a declaration that, in the event the court finds that the Village is not exclusively liable to repay the Treasurer for the post-TIF refunds she made to the taxpayers in the Village's TIF districts, the third-party defendants are liable to repay their

proportionate share of the refunds. The Treasurer also sought recovery against the third-party defendants under the doctrine of unjust enrichment.

¶ 15      The third-party defendants filed a motion to dismiss the third-party complaint. The Village filed a motion for summary judgment on its complaint, and the Treasurer filed a cross-motion for summary judgment on her counterclaims.

¶ 16                                III. The Circuit Court's Findings

¶ 17      The circuit court found that the legislature has not expressly given the Treasurer the authority to recover the post-TIF refund amounts from the Village. However, the court found that sections 23-20 and 20-175(a-1)[1] of the Property Tax Code gave the Treasurer the implied authority to recover the post-TIF refund amounts from the Village. The circuit court stated:

> "Section 23-20 of the Property Tax Code provides that [the Treasurer] is required to make refunds pursuant to successful property tax objections 'from the next funds collected after entry of the final order until full payment of the refund and interest thereon has been made.' 35 ILCS 200/23-20 (West 2012). Section 20-175[(a-1)] of the Property Tax Code provides that [the Treasurer] may deduct refunds for erroneous assessments or overpayments, 'pro rata, from the moneys due to taxing bodies which received the taxes erroneously paid, or their legal successors.' 35 ILCS 200/20-175[(a-1)] [(West 2014)]. Thus, the Court finds that [the Treasurer's] express authority to be reimbursed for refunds paid pursuant to successful property tax objections fairly implies [the Treasurer's] authority to recover the [post-TIF refund amounts] from [the Village]."

¶ 18      The circuit court (1) denied the Village's motion for summary judgment on count I of its complaint for a declaratory judgment that it is not required to repay the Treasurer for the post-TIF refund amounts, (2) denied the Village's motion for summary judgment on count II of its complaint seeking to enjoin the Treasurer from deducting the post-TIF refund amounts from any distribution of general property tax revenue due and owing to the Village, (3) granted the Treasurer's cross-motion for summary judgment on count I of her counterclaim for a declaratory judgment that the Village is liable for the post-TIF refund amounts, and (4) granted the Treasurer's motion for summary judgment on count II of her counterclaim against the Village for unjust enrichment. The circuit court ruled the third-party defendants' motion to dismiss the third-party complaint was moot.

¶ 19                                IV. The Village's Appeal

¶ 20      The Village appeals the order denying its motion for summary judgment on its complaint for a declaratory judgment and for injunctive relief and granting the Treasurer's cross-motion for summary judgment on her counterclaims. Summary judgment is appropriate when the pleadings, depositions, and admissions on file, together with any affidavits, viewed in the light most favorable to the nonmoving party, show there is no genuine issue of material fact

---

[1]Prior to January 1, 2015, the relevant language in subsection 20-175(a-1) was located in subsection 20-175(a). See Pub. Act 98-1026 (eff. Jan. 1, 2015) (amending 35 ILCS 200/20-175) (making other changes not relevant to this appeal). For the sake of clarity, we refer to subsection 20-175(a-1).

and that the moving party is entitled to judgment as a matter of law. *Shuttlesworth v. City of Chicago*, 377 Ill. App. 3d 360, 365 (2007). Where parties file cross-motions for summary judgment, they agree that only a question of law is involved and invite the court to decide the issues based on the record. *Illinois Emasco Insurance Co. v. Tufano*, 2016 IL App (1st) 151196, ¶ 17. "However, the mere filing of cross-motions for summary judgment does not establish that there is no issue of material fact, nor does it obligate the court to grant summary judgment." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. Our review is *de novo*. *Tufano*, 2016 IL App (1st) 151196, ¶ 17.

¶ 21    The issue on appeal, underlying the grant of summary judgment in favor of the Treasurer and against the Village, can be summarized as follows: does the legislature authorize the Treasurer (either in the TIF Act or the Property Tax Code) to be reimbursed for her payment of the post-TIF refund amounts from the Village?

¶ 22    This case presents an unusual procedural posture, in that the excessive tax increments were initially collected by the Treasurer and paid to the Village, which deposited them into the special tax allocation funds *during* the 23-year lifetime of TIF Districts One and Two, pursuant to section 11-74.4-8 of the TIF Act (65 ILCS 5/11-74.4-8 (West 2012)); however, the excessive tax increments were refunded *after* the expiration of the 23-year period, when the tax collecting process had returned to its pre-TIF state and was controlled by the Property Tax Code and not the TIF Act. Accordingly, we look to the Property Tax Code instead of the TIF Act in determining whether the legislature authorized the Treasurer to be reimbursed by the Village for her post-TIF refunds of the protested property taxes.[2]

¶ 23    Initially, we note the property taxes collected by the Treasurer do not belong to her; rather, those revenues belong to the taxing districts that levied for the taxes and are processed through the Class A fund. See 55 ILCS 5/3-11003 (West 2012). Accordingly, the Property Tax Code provides that the ultimate liability for any refunds of property taxes rests with the taxing body that received the erroneously overpaid taxes and not with the Treasurer. Specifically, section 23-20 of the Property Tax Code states, "[i]f the final order of the Property Tax Appeal Board or of a court results in a refund to the taxpayer, refunds shall be made by the collector *** from *the next funds collected* after entry of the final order until full payment of the refund and interest thereon has been made." (Emphasis added.) 35 ILCS 200/23-20 (West 2012). Section 20-175(a-1) of the Property Tax Code provides that when a taxpayer has overpaid his taxes, the Treasurer may refund him out of the funds present in the Class A fund and then "deduct the amount thereof, pro rata, from the moneys due to taxing bodies which received the taxes erroneously paid, or their legal successors." 35 ILCS 200/20-175(a-1) (West 2014).

¶ 24    "The fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent. [Citation.] The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, a court may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. All provisions of a statute are to be viewed as a whole, and each

---

[2]We also note that even looking to the TIF Act, no provision therein addresses post-TIF refunds of protested property taxes or the Treasurer's right to reimbursement therefor.

provision must be interpreted in light of other relevant sections of the statute. *Carpenter v. Exelon Enterprises Co.*, 399 Ill. App. 3d 330, 337 (2010). The construction of a statute is a question of law that is reviewed *de novo*. *Hayashi*, 2014 IL 116023, ¶ 16.

¶ 25 Read as a whole, sections 23-20 and 20-175(a-1) of the Property Tax Code indicate that, after the entry of the refund orders, the Treasurer was required to make the post-TIF refunds and is to reimburse herself from the next property tax funds she collects that are due to be distributed to the taxing district that received the erroneously paid taxes.

¶ 26 The erroneously paid taxes at issue here were made by taxpayers in TIF Districts One and Two whose properties were over-assessed and who therefore paid higher tax increments than they should have paid during the TIF districts' lifetimes. The Village received all the erroneously paid tax increments for the 23-year lifetimes of the TIF districts and deposited them into the special tax allocation funds, where they were used for the development and redevelopment of various properties in the Village's downtown area. As such, the Treasurer is entitled to reimbursement of the post-TIF refunds from the next property tax funds she collects from the Village.

¶ 27 We note that county collectors are permitted to " 'exercise discretion to accomplish in detail what is legislatively authorized in general terms.' " *Phoenix Bond & Indemnity Co. v. Pappas*, 194 Ill. 2d 99, 105 (2000) (quoting *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 428 (1988)). The legislature never set forth a reimbursement mechanism specifically for post-TIF refunds, but it did set forth a general mechanism for the refunding and reimbursement of overpaid taxes in sections 23-20 and 20-175(a-1) of the Property Tax Code. The specific policy adopted by the Treasurer here, in making the post-TIF refunds out of the Class A fund and then seeking reimbursement from the next property taxes collected by the Village, is consistent with the general statutory scheme established by the legislature in sections 23-20 and 20-175(a-1) of the Property Tax Code.

¶ 28 Accordingly, we affirm the grant of summary judgment in favor of the Treasurer. As a result of our disposition of this case, we need not address the other arguments on appeal.

¶ 29 Affirmed.