# Illinois Official Reports

## Appellate Court

---

**In re Application of the County Collector, 2017 IL App (2d) 160483**

---

| | |
|---|---|
| Appellate Court Caption | *In re* APPLICATION OF THE COUNTY COLLECTOR, for Judgment and Order of Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes for the Year 2008 and Prior Years (James Wolfe, Petitioner-Appellant, v. De Kalb County Collector, Respondent-Appellee, and Town of Cortland, Intervenor-Appellee).—*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR OF DE KALB COUNTY ILLINOIS, for Order of Judgment and Sale Against Real Estate Returned Delinquent for the Nonpayment of General Taxes for the Year 2012 (Janson Investment Company, Petitioner-Appellant, v. De Kalb County Collector, Respondent-Appellee, and Town of Cortland, Intervenor-Appellee). |
| District & No. | Second District<br>Docket Nos. 2-16-0483, 2-16-0768 cons. |
| Filed | August 2, 2017 |
| Decision Under Review | Appeal from the Circuit Court of De Kalb County, Nos. 12-TX-50 and 14-TX-38; the Hon. William P. Brady, and the Hon. Bradley J. Waller, Judges, presiding. |
| Judgment | Affirmed in part and reversed in part. |

| Counsel on Appeal | Terry J. Carter and Eric H. Wudtke, of Carter Legal Group, P.C., of Chicago, for appellant Joseph Bittorf. |
|---|---|
| | Jeffrey S. Blumenthal, of Slutzky & Blumenthal, of Chicago, for other appellant. |
| | Richard D. Amato, State's Attorney, of Sycamore (Sarah J. Gallagher Chami and Stephanie P. Klein, Assistant State's Attorneys, of counsel), and Abby L. Sgro and Christopher E. Sherer, of Giffin, Winning, Cohen & Bodewes, P.C., of Springfield, for appellee De Kalb County Collector. |
| | Adam B. Simon, of Ancel Glink Diamond Bush DiCianni & Krafthefer, PC, of Vernon Hills, for other appellee. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Justices Jorgensen and Spence concurred in the judgment and opinion. |

**OPINION**

¶ 1    This appeal involves two tax purchasers, the petitioners, Joseph Bittorf and Janson Investment Company (Janson). Their tax purchases were declared to be sales in error, and the petitioners were thus entitled to refunds (35 ILCS 200/21-310 (West 2014)). The respondent, the De Kalb County Collector (Collector), filed motions for the circuit court of De Kalb County to determine how the refunds at issue would be paid. In each case, the trial court determined that the refund should be paid from the tax revenue collected for special service areas (SSAs) that had expired. The petitioners appeal from these orders, and their appeals were consolidated. The petitioners argue that they will never receive their refunds, because the expired SSAs are no longer generating tax revenue. We affirm in part and reverse in part.

¶ 2                                    I. BACKGROUND
¶ 3                                    1. No. 2-16-0483
¶ 4    This case concerns 65.2 acres of unimproved farmland in De Kalb County. The property is identified by PIN 09-29-276-011. The property owner failed to pay the 2008 real estate taxes on that property in a timely fashion. On October 26, 2009, James Wolfe purchased the unpaid taxes for $314,367.39 and received a tax certificate.

¶ 5    On June 4, 2013, Wolfe filed a petition to vacate the tax sale, for a declaration of a sale in error, and for a refund, pursuant to section 21-310(a)(5) of the Property Tax Code (Code) (35 ILCS 200/21-310(a)(5) (West 2012)). The basis for the petition was that the property had

- 2 -

been classified by the assessor as farmland but taxed as if it were subdivided residential land. On August 20, 2013, the trial court denied the petition, finding that Wolfe could have, through due diligence, discovered the discrepancy and the reasons for it prior to purchasing the taxes.

¶ 6 On September 23, 2013, Wolfe filed a petition for an order declaring a sale in error pursuant to section 22-50 of the Code (35 ILCS 200/22-50 (West 2012)), based on a typographical error that improperly extended the redemption date by three days. Following a hearing, the trial court denied the petition. The trial court explained that by improperly extending the redemption date, Wolfe had not complied with the requirements of section 21-385 of the Code (35 ILCS 200/21-385 (West 2012)). Following the denial of his motion to reconsider, Wolfe filed a timely notice of appeal.

¶ 7 On appeal, this court reversed the trial court's determination. See *In re Application of the County Collector*, 2014 IL App (2d) 140223. We held that a tax purchaser need only substantially comply with the requirements of section 21-385 of the Code. *Id.* ¶ 20. We further held that Wolfe had substantially complied with section 21-385. *Id.* ¶ 23. However, we remanded for the trial court to determine whether Wolfe made a *bona fide* effort to comply with the statutory requirements to get a tax deed and whether he was therefore entitled to a declaration of a sale in error and the return of his money. *Id.* ¶ 24.

¶ 8 On May 11, 2015, on remand, the trial court found that Wolfe had made a *bona fide* effort to comply with the statutory requirements to get a tax deed and that, therefore, he was entitled to a declaration of a sale in error and the return of his money. On that same date, the Collector filed a motion for a ruling under section 21-310(d) of the Code (35 ILCS 200/21-310(d) (West 2014)). Under that section, if a sale is declared to be a sale in error, "the county collector shall, on demand of the owner of the certificate of purchase, refund the amount paid, pay any interest and costs as may be ordered under Sections 21-315 through 21-335, and cancel the certificate so far as it relates to the property. The county collector shall deduct from the accounts of the appropriate taxing bodies their pro rata amounts paid." *Id.* The Collector alleged that the property at issue was located in the Town of Cortland. In 2006, Cortland enacted Ordinance No. 2006-30, which established SSAs 4 through 8. The property at issue was within SSA 7 and was subject to SSA 7's taxes. These SSAs were established for the purpose of collecting taxes to pay for a new water treatment system, commonly referred to as the "Schaeffer System." The Collector further alleged that Cortland established a "Bond and Interest Fund" (Bond Fund) at a bank, into which all SSA taxes were deposited upon collection.

¶ 9 The Collector alleged that it did not have the authority to get funds for a refund from the Bond Fund. The Collector argued that the legislature intended that the taxing body for which a tax was collected was the entity that would issue a refund in the case of a sale in error. It further argued that the taxing body here was (1) SSA 7, (2) SSA 7 plus the other SSAs established to fund the Schaeffer System, or (3) Cortland.

¶ 10 On June 1, 2015, Cortland filed a petition to intervene. Cortland alleged that, of the $314,367.39 that Wolfe paid for the subject tax purchase, $301,566.10 was collected for SSA 7 and remitted to the Bond Fund. Cortland stated that it established and levied taxes for SSA 7 and, separately, levied general *ad valorem* taxes against all taxable property within Cortland. Cortland alleged that it had the right to intervene in the proceeding because,

whether the refund had to be paid from Cortland's general tax revenue or from the SSA tax revenue, Cortland would be adversely affected.

¶ 11     On July 13, 2015, Bittorf, the assignee of the tax certificate, filed a response to Cortland's petition to intervene. Bittorf argued that Cortland had no interest in the proceeding because the plain language of the statute (35 ILCS 200/21-310(d) (West 2014)) required that the Collector refund the money. Where the Collector obtained the money was a collateral issue not relevant to his case. Bittorf also argued that Cortland's petition to intervene was untimely because the case had been pending for two years and had gone to the appellate court and back. On August 19, 2015, following a hearing, the trial court granted Cortland's petition to intervene.

¶ 12     On September 30, 2015, Bittorf filed a response to the Collector's motion for a ruling under section 21-310(d) of the Code. Bittorf argued that, under the plain language of section 21-310(d), the Collector was required to issue a refund for a sale in error and, only after this step was taken, the Collector could deduct the amount of the refund from the accounts of the appropriate taxing bodies. Bittorf argued that an SSA is not a taxing body within the meaning of the Code and that, in this case, the taxing body was Cortland, as it had established the SSAs for the Schaeffer System. Bittorf argued that his refund should be paid from Cortland's general tax revenue. Alternatively, he argued that his refund should be paid from revenue from all of Cortland's SSAs, including non-Schaeffer SSAs.

¶ 13     On October 26, 2015, Cortland filed a reply in support of the Collector's motion for a ruling under section 21-310(d). Cortland argued that, administratively, the Collector issued a refund required by section 21-310(d) by deducting from the next taxes collected for the appropriate taxing bodies. Cortland further argued that SSA 7 was a taxing body and that the refund in this case could be refunded only from the next taxes collected for SSA 7.

¶ 14     On November 3, 2015, a hearing was held on the motion for a ruling under section 21-310(d). The parties acknowledged that the Collector had a sale-in-error fund but that, by statute, that fund was set up to pay only interest and costs (see 35 ILCS 200/21-335 (West 2014)) not the refunds of amounts that were already disbursed to the taxing bodies. The Collector acknowledged that SSA 7 had no money and that the Schaeffer SSAs combined had $20,000. The trial court asked whether tax purchasers who had been granted sales in error would be unable to get refunds if the SSAs had expired. Cortland responded that, although the tax purchasers could not recover from the taxing body, they could recover from the property owners, under section 21-340 of the Code. Bittorf argued that section 21-340 applied only when a tax purchaser paid taxes by mistake. Bittorf contended that the Collector should be ordered to pay Bittorf's refund pursuant to section 21-310(d).

¶ 15     On December 2, 2015, the trial court issued an oral ruling. The trial court found that the Collector could not be required to pay the refund up front, as the Collector might have to use tax funds from other cities or municipalities. The trial court found such an interpretation of section 21-310(d) "unacceptable."

¶ 16     The trial court stated that the issue was whether Bittorf's refund should come from Cortland's general tax revenue or just from the taxes collected for the SSAs. The trial court noted that appellate and supreme court decisions had limited the collection of taxes for SSAs to those areas that benefit. The trial court stated that, if it were to order that the refund be paid from Cortland's general tax revenue, it would effectively force non-SSAs to pay for a benefit they did not receive. The trial court acknowledged that it might be unfair for Bittorf

- 4 -

to have to wait for his refund, but it noted that he was on notice that a portion of the taxes was from an SSA and that it was Bittorf's own error that caused the sale to be declared a sale in error. The trial court concluded that the refund should be paid from the SSAs. The trial court also found that the SSAs were not taxing bodies. The trial court acknowledged that the entire town of Cortland had benefitted from the Schaeffer System, but it reiterated that it would be improper to make the entire town pay for the SSAs' tax liability. The trial court directed each party to submit a written order and stated that once it signed a written order its order would be final.

¶ 17 On December 28, 2015, Cortland filed a motion for clarification as to whether Bittorf's refund was to be paid from SSA 7's tax revenue or from all of Cortland's SSA tax revenue. Cortland noted that, in addition to SSAs 4 through 8, it had two SSAs, 1 and 9, that were not created to finance the Schaeffer System. Cortland requested a clarification that SSAs were taxing bodies and that Bittorf's refund was to be paid from tax revenue only from the Schaeffer SSAs. On May 24, 2016, the trial court entered a written order granting Cortland's motion for clarification. Thereafter, Bittorf filed a timely notice of appeal.

¶ 18 2. No. 2-12-0768

¶ 19 On October 29, 2013, Janson purchased the 2012 real estate taxes on a parcel located wholly within Cortland's SSA 8, identified by PIN 09-33-100-009. Janson paid $385,166.56 for the 2012 tax sale certificate. Of this amount, $369,402.12 was attributable to SSA 8. On September 15, 2014, Janson paid an additional $290,806.23 for the 2013 taxes, $279,088.64 of which was attributable to SSA 8. The record indicates that, of the total $675,972.79 Janson paid, at least $286,867.40 did not go to the Bond Fund. Rather, the Collector used it to pay refunds due on other sales in error in SSAs 4 through 8.

¶ 20 On November 25, 2014, Janson filed a petition to vacate the sale on the basis that the assessor had improperly classified the property as farmland. On January 30, 2015, the Collector filed a motion for a ruling under section 21-310(d) of the Code. The Collector explained that the SSA 8 taxes were deposited in the Bond Fund, but that it did not have the authority to deduct money from that fund, which was established by Wells Fargo Bank and Cortland. The Collector requested a finding that the appropriate taxing body was (1) SSA 8, (2) the Schaeffer SSAs collectively, or (3) Cortland.

¶ 21 On February 20, 2015, Cortland filed a petition to intervene. On April 24, 2015, Janson objected to the petition to intervene, on the same basis that Bittorf objected. On May 22, 2015, the trial court granted Cortland's petition to intervene.

¶ 22 On July 8, 2016, a hearing was held on Janson's petition to vacate the sale and the Collector's motion for a ruling under section 21-310(d) of the Code. The Collector argued that it did not have the money to issue any refunds up front and that the statute specifically provided that the funds should come from the appropriate taxing bodies. Cortland argued that the refund should come from SSAs 4 through 8, not from Cortland's general tax revenue. Cortland argued that it was reasonable for an SSA to be a taxing body. Cortland noted that, from a legal perspective, SSA taxes must bear a rational relationship between the burden and the benefits. It argued that requiring the refunds to be paid from its general tax revenue would conflict with the required rational relationship, as Cortland as a whole did not benefit from the Schaeffer System. Finally, Cortland argued that, if the SSA tax funds were

insufficient to pay the refund, Janson had another statutory remedy—to recover from the owner of the property, under section 21-340 of the Code.

¶ 23 Janson argued that an SSA could not be a taxing body because it could not levy taxes, was not a corporation, could not sue or be sued, and had no office, officers, or directors. Janson further argued that it would never get its money back if the SSAs were the taxing bodies because no taxes were to be collected for the SSAs after October 2016. Janson argued that the purpose of the Code was to protect tax purchasers. Thus, it should be Cortland that suffered the loss, not Janson. Janson acknowledged that it took a risk when it purchased the taxes, but it took the risk knowing that the transaction was bound by the provisions of the Code, which allowed for a full refund in the event of a sale in error.

¶ 24 On August 12, 2016, the trial court issued a written ruling. The trial court noted that no one was disputing the validity of the ordinance that created SSA 8. The trial court found that the Collector collected money from taxpayers and remitted it to the appropriate taxing bodies. The trial court further found that the plain language of the statute indicated that Janson was entitled to receive its money back as a result of the sale in error; however, the language did not indicate that the refund was due immediately. The trial court stated that ordering an immediate refund would render the last sentence of section 21-310(d) superfluous and that the Collector was required to pay a refund only when it had the money from the appropriate taxing bodies.

¶ 25 The trial court then turned to the issue of which taxing body was responsible for the refund. The trial court noted that section 27-5 of the Special Service Area Tax Law (35 ILCS 200/27-5 (West 2014)) provided that special services were to be paid for from taxes levied upon property in that special service area. The trial court noted that the taxes collected for SSA 8 were deposited directly in the Bond Fund, pursuant to an intergovernmental agreement between Cortland and De Kalb County. The trial court found that SSA 8 was analogous to a taxing body and that Cortland had established the SSA exclusively for the real estate within SSA 8. The trial court determined that the refund of the amount Janson paid for the taxes attributable to SSA 8 should be paid from future SSA 8 taxes.

¶ 26 As such, the trial court declared that (1) a sale in error had occurred on the parcel at issue for tax years 2012 and 2013; (2) Janson was due $385,166.56 for 2012 taxes and $290,806.23 for 2013 taxes; (3) Janson was entitled to interest and costs, which were to be paid, to the extent possible, by the De Kalb County Treasurer pursuant to section 21-330 of the Code; (4) the purchased taxes attributable to SSA 8 ($369,402.12 and $279,088.64 for 2012 and 2013, respectively) were to be refunded from tax revenue for SSA 8; and (5) the remainder of the taxes, which were attributable to Cortland generally, were to be refunded from Cortland's general tax revenue. Thereafter, Janson filed a timely notice of appeal.

¶ 27                                    II. ANALYSIS
¶ 28                                1. Petition to Intervene
¶ 29 On appeal, Bittorf first argues that the trial court erred in granting Cortland's petition to intervene in his case. The petition for sale in error was filed on September 23, 2013, and was granted on May 11, 2015. Cortland did not move to intervene until June 1, 2015, after the sale in error was granted. Bittorf contends that the petition to intervene should have been denied because it was untimely and the Collector was advocating for Cortland's interests.

¶ 30     Cortland argues that, under section 2-408(a) of the Code of Civil Procedure (735 ILCS 5/2-408(a) (West 2014)), a party may intervene as a matter of right when its interests would be adversely affected. Cortland argues that it clearly fell within this category, as the trial court's ruling would determine whether it, or the SSAs administered by it, would be required to pay Bittorf's refund. Cortland argues that its interests were not protected by the Collector because the Collector expressed no preference for which taxing body was responsible for the refund. Finally, Cortland argues that its petition to intervene was timely because its interests were not at stake until the trial court granted the sale in error.

¶ 31     Section 2-408(a)(2) of the intervention statute states that "[u]pon timely application anyone shall be permitted as of right to intervene in an action *** when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant will or may be bound by an order or judgment in the action." 735 ILCS 5/2-408(a)(2) (West 2014). Therefore, section 2-408(a)(2) provides that anyone has a right to intervene in a particular action when (1) the representation of the person's interest by existing parties is or might be inadequate and (2) the person will or might be bound by an order or judgment in the action. *Joyce v. Explosives Technologies International, Inc.*, 253 Ill. App. 3d 613, 616 (1993). We may reverse the trial court's ruling only if the trial court abused its discretion. *Freesen, Inc. v. County of McLean*, 277 Ill. App. 3d 68, 72 (1995).

¶ 32     In the present case, we cannot say that the trial court abused its discretion in granting Cortland's petition to intervene. Cortland's petition was not untimely. Clearly, Cortland's interests were not at stake until the trial court granted the sale in error. Cortland's petition was filed shortly after that order was entered. Further, the Collector was not protecting Cortland's interests because the Collector expressed no preference as to which taxing body was responsible for the refund. Finally, as the trial court was determining the extent to which Bittorf's refund would be paid from Cortland's general tax revenue and/or SSA tax revenue, Cortland would be bound by the trial court's judgment. Accordingly, the trial court properly granted Cortland's petition to intervene.

¶ 33                         2. Is the Collector Required to Pay up Front?

¶ 34     The petitioners argue that the trial court erred in its interpretation of section 21-310(d). They contend that, under the plain language of the statute, they are entitled to their refunds on demand, in other words, up front. They further argue that the legislature could not have intended absurd results. If a refund is not paid up front, a situation could arise where a taxing body ceases to exist or the taxes being collected are drastically lowered such that a tax purchaser could never receive a refund. Without the guarantee of a refund as provided by section 21-310(d), tax purchasers would be irreparably harmed.

¶ 35     In arguing that they are entitled to their refunds on demand, the petitioners rely on *Village of Arlington Heights v. Pappas*, 2016 IL App (1st) 151802. In that case, at issue were tax refunds due to property owners in certain tax increment financing (TIF) districts. *Id.* ¶ 1. The Village had established two TIFs in order to develop various properties, such as public garages, a theater, and a park. *Id.* ¶ 9. When collected, TIF taxes are segregated and deposited into a special account, which is then used to pay for the TIF projects. *Id.* ¶ 5. By statute, TIFs expire after 23 years. *Id.* In *Arlington Heights*, the property owners had filed successful tax objections based on the assessed values of their properties during the lifetime of the TIF districts. *Id.* ¶ 10.

¶ 36    The property owners were awarded refunds after the TIFs had expired. *Id.* The Cook County treasurer paid the refunds because the trial court had ordered it to do so, but also to stop interest from accruing. *Id.* The treasurer then turned to the Village, seeking reimbursement for the refunds. *Id.* ¶ 11. The Village filed a complaint, seeking a declaration that it was not liable for post-TIF refunds. *Id.* ¶ 13. Alternatively, the Village argued that all the taxing districts located in the Village's TIF districts should share the repayment burden. *Id.* The treasurer filed a counterclaim alleging that the Village was responsible for the refunds and also seeking recovery from the Village under the doctrine of unjust enrichment. *Id.*

¶ 37    The trial court held that, although the legislature had not expressly given the treasurer the authority to recover the post-TIF refund amounts from the Village, it gave the treasurer the implied authority to do so. *Id.* ¶ 17. The trial court found the implied authority in sections 23-20 and 20-175(a-1) of the Code. Section 23-20 provided that the treasurer was to pay refunds for successful property tax objections "from the next funds collected after entry of the final order until full payment of the refund and interest thereon has been made." 35 ILCS 200/23-20 (West 2014). Section 20-175(a-1) provided that the Treasurer could deduct funds for erroneous assessments or overpayments "pro rata, from the moneys due to taxing bodies which received the taxes erroneously paid." 35 ILCS 200/20-175(a-1) (West 2014). The trial court found that the Treasurer's express authority to recover refunds paid pursuant to successful property tax objections fairly implied the Treasurer's authority to recover the post-TIF refunds from the Village. *Arlington Heights*, 2016 IL App (1st) 151802, ¶ 17.

¶ 38    The reviewing court affirmed. The reviewing court held that the Code provided that the ultimate liability for any refunds of property taxes rested with the taxing body that received the erroneously overpaid taxes and not with the treasurer. Specifically, it held that "[r]ead as a whole, sections 23-20 and 20-175(a-1) of the Property Tax Code indicate that, after the entry of the refund orders, the Treasurer was required to make the post-TIF refunds and is to reimburse herself from the next property tax funds she collects that are due to be distributed to the taxing district that received the erroneously paid taxes." *Id.* ¶ 25. "The specific policy adopted by the Treasurer here, in making the post-TIF refunds out of the [Protest] fund and then seeking reimbursement from the next property taxes collected by the Village, is consistent with the general statutory scheme established by the legislature in sections 23-20 and 20-175(a-1) of the Property Tax Code." *Id.* ¶ 27. The petitioners argue that, as in *Arlington Heights*, the proper procedure here was for the Collector to issue the refunds and then seek reimbursement from Cortland.

¶ 39    The Collector argues that the trial court properly determined that the refunds should be paid from the future tax receipts of the appropriate taxing bodies. The Collector contends that its accounts are separate from the treasurer's accounts and thus it does not have money to pay the refunds up front. The Collector argues that the Code clearly indicates that refunds are to be paid from the tax revenue of the appropriate taxing bodies. The Collector notes that section 21-340 allows a tax purchaser, in the case of a sale in error, to recover from the property owner. The Collector contends that, if it were always required to pay up front, section 21-340 would be rendered meaningless. The Collector also notes that, although the treasurer in *Pappas* paid the refunds up front, she was not required to do so by either section of the Code that was relied on in that case.

¶ 40    Cortland likewise argues that the Code does not require the Collector to advance the money to pay the refunds. Cortland contends that the Collector has no funds to pay the refunds up front, which is why section 21-310(d) directs the Collector to pay the refunds from the tax revenue of the appropriate taxing bodies. Just like a bank, the Collector is not required to advance funds unless the Collector is holding money for the account of the appropriate taxing body. Cortland argues that, if the Collector does not have funds, there is an alternative remedy in section 21-340, which allows the tax purchaser to recover from the property owner.

¶ 41    Cortland argues that *Arlington Heights* is distinguishable and does not control on the question presented in this case. Cortland contends that a tax objector is easily differentiated from a tax purchaser who is granted a sale in error. While the former is forced to correct an error, the latter voluntarily avails himself of an investment opportunity. Further, a tax purchaser can always recover from the property owner, while the tax objector can recover only from the treasurer. Cortland also argues that its 2015 tax extension was only $629,754.26, as opposed to the amount in *Arlington Heights* of about $33 million. Cortland notes that its entire 2015 general tax revenue was less than the amount of the refunds due to the petitioners.

¶ 42    We note that the "fundamental rule of statutory construction is to ascertain and effectuate the legislature's intent. [Citation.] The most reliable indicator of the legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. [Citation.] Where the language is clear and unambiguous, a court may not depart from the plain language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. All provisions of a statute are to be viewed as a whole, and each provision must be interpreted in light of other relevant sections of the statute. *Carpenter v. Exelon Enterprises Co.*, 399 Ill. App. 3d 330, 337 (2010). The construction of a statute is a question of law, which is reviewed *de novo*. *Hayashi*, 2014 IL 116023, ¶ 16.

¶ 43    The Code clearly provides that the ultimate liability for any property tax refund rests with the taxing body that received the erroneously overpaid taxes and not with the treasurer. *Pappas*, 2016 IL App (1st) 151802, ¶ 23. That is why section 21-310(d) requires the Collector to "deduct from the accounts of the appropriate taxing bodies their pro rata amounts paid." 35 ILCS 200/21-310(d) (West 2014). However, the Code provides no mechanism or timeline for issuing the refunds. As stated in *Arlington Heights*, county collectors are permitted to exercise discretion to accomplish in detail what is legislatively authorized in general terms. *Arlington Heights*, 2016 IL App (1st) 151802, ¶ 27. As the statute does not dictate timing, collectors have a component of discretion. No one seems to dispute that the Collector here does not have the funds on hand to issue the refunds. Janson argued that the Collector received $24,000 in late penalty interest on its tax purchase, but no one argues that the Collector has a late-penalty-interest fund big enough to pay the petitioners' refunds. As such, the statute contemplates that the Collector might not be able to pay the refunds until it has collected funds from the appropriate taxing bodies.

¶ 44    In arguing that the Collector must first issue the refunds and then reimburse itself from the appropriate taxing bodies, the petitioners rely on *Arlington Heights*, in which the Treasurer had issued the refunds first. However, at issue in that case were tax refunds to property owners. The applicable section of the Code, section 23-20, stated that such refunds

were to be paid out of the "Protest Fund until such funds are exhausted and thereafter from the next funds collected after entry of the final order until full payment of the refund and interest thereon has been made." 35 ILCS 200/23-20 (West 2014). It appears that there was enough money in the Protest Fund to issue the refunds first, or that the Treasurer had other funds available to pay the refunds first. As such, the timing of the refunds was not at issue in that case. Nonetheless, the above-quoted language from section 23-20 demonstrates that the legislature contemplated that in certain instances refunds could not be paid immediately. In this case, since there is no fund to pay the sales in error refunds, the only reasonable interpretation of section 21-310(d) of the Code is that it allows the Collector to issue the refunds after the Collector collects the funds from the appropriate taxing bodies.

¶ 45                     3. What Is the Appropriate Taxing Body?

¶ 46      The petitioners argue that, even if the Collector can wait to collect the funds before issuing their refunds, the refunds must come from Cortland's general tax revenue. They argue that a "taxing body" is synonymous with a "taxing district." To be classified as a taxing district, an entity must have the power to levy a tax. They argue that only Cortland has the power to levy a tax, not the SSAs. Alternatively, the petitioners argue that, if Cortland is not the taxing body, their refunds must come from all of Cortland's SSA tax revenue.

¶ 47      The petitioners also argue that the trial court's decision will lead to absurd and unjust results, as it frustrates the purpose of the Code, which is to encourage tax purchasers to participate in the tax-sale process. They argue that tax purchasers would avoid tax sales if they were unable to obtain refunds on sales in error. They also argue that, by ruling as it did, the trial court deprived them of their protection under section 21-310(d) of the Code because the Schaeffer SSAs have expired, the taxes for those SSAs were no longer being collected as of 2016, and thus the petitioners will never receive their refunds.

¶ 48      Cortland argues that refunds of Schaeffer SSA taxes should be paid only from Schaeffer SSA tax revenue because the SSAs are taxing bodies within the meaning of section 21-310(d) of the Code. Cortland further argues that equity and public policy require that the refunds be paid from the Schaeffer SSAs. Cortland notes that a rational relationship must exist between an SSA benefit and the additional taxation. Cortland argues that paying the refunds from the entire municipality's tax revenue would be equivalent to levying the SSA taxes against the entire municipality, which would destroy the rational relationship that makes the taxing scheme constitutional. Finally, Cortland argues that, if the Collector is unable to issue the refunds, the petitioners can recover from the property owners, under section 21-340 of the Code.

¶ 49      The purpose of section 21-310 of the Code "is to afford relief to [the] taxbuyer from the effect of caveat emptor purchases at void tax sales." *La Salle National Bank v. Hoffman*, 1 Ill. App. 3d 470, 476 (1971) (discussing section of Illinois Revised Statutes that preceded current section of the Code). The Code does not define a "taxing body," but it does define a "taxing district." A taxing district is defined as "[a]ny unit of local government, school district, or community college district with the power to levy taxes." 35 ILCS 200/1-150 (West 2014).

¶ 50      The terms "taxing body" and "taxing district" are often used interchangeably. For example, section 20-175(a) of the Code, providing for refunds of erroneous assessments or overpayments, states that the court shall "direct the county collector to refund the taxes and deduct the amount thereof, pro rata from the moneys due to taxing bodies which received the

- 10 -

taxes erroneously paid." 35 ILCS 200/20-175(a) (West 2014). Later, in the same section, the statute provides that, to "cover the cost of interest, the county collector shall proportionately reduce the distribution of taxes collected for each taxing district in which the property is situated." *Id.* Section 18-150, relating to extension of tax rates, provides: "[w]hen collected, the taxes shall be divided among the taxing bodies levying the same." 35 ILCS 200/18-150 (West 2014). Pursuant to the Code, a taxing district levies taxes. 35 ILCS 200/1-150 (West 2014). As such, section 18-150 tends to indicate that a "taxing body" is synonymous with a "taxing district."

¶ 51  Case law also supports the proposition that the terms "taxing body" and "taxing district" are synonymous, as those terms are largely used therein interchangeably. See *Jackson v. Board of Election Commissioners*, 2012 IL 111928, ¶ 52 ("[w]hile local taxing districts are the ultimate beneficiaries of the property tax system, it is therefore apparent that under that system, property owners owe an obligation to pay their taxes to county *** tax collection authorities, and the county *** tax collection authorities, *** have an obligation to disburse the tax revenues they receive to the local taxing bodies"); *Madison Two Associates v. Pappas*, 227 Ill. 2d 474, 488 (2008) (discussing in one part that, in the majority of cases, a taxing district will not choose to intervene in a tax objection case; later stating that intervention by a "taxing body" was not likely to create complications, as the goal of "taxing districts" normally aligned with those of the county collector); *People ex rel. Skidmore v. Anderson*, 56 Ill. 2d 334, 341 (1974) ("Although we are sympathetic with the intervenors [(taxing districts)] because of the problem which may arise from the ordering of refunds, it is not possible to distinguish between the intervenors and other taxing bodies which have been ordered in other cases to make refunds.").

¶ 52  Thus, an SSA itself is not a taxing body or a taxing district, as it does not have the power to levy taxes. 35 ILCS 200/1-150 (West 2014). Cortland is the taxing body here, as Cortland established the SSAs and levied the taxes therefor. Cortland argues that it would be improper to have the whole town pay the refunds for the SSAs, because the entire town did not receive the requisite benefit. However, just as the Village's general tax revenue was used to pay the TIF refunds in *Arlington Heights*, even though the TIF districts did not encompass the entire village, the refunds in the present case can be paid from Cortland's general tax revenue. *Arlington Heights*, 2016 IL App (1st) 151802, ¶ 27. This comports with Illinois's public policy to encourage bidders to participate in tax sales in order to ensure effective collection of revenue. See *Thornton Ltd. v. Rosewell*, 72 Ill. 2d 399, 407 (1978). The availability of refunds in those few cases where sales in error are declared provides sufficient protection for the tax-sale bidder. *Id.* Based on this public policy, the refunds should be paid from Cortland's general tax revenue of Cortland, as opposed to the alternative of the petitioners' losing their investments.

¶ 53  The Collector and Cortland rely on section 21-340 of the Code for the proposition that the petitioners can recover from the property owners. Section 21-340 states:

> "Recovery of amount of tax or special assessment paid by purchaser at erroneous sale. *In addition to all other remedies*, when the purchaser *** of a certificate of purchase that has been declared an erroneous sale, has paid any tax *** upon the property sold, which *** was not refunded to the tax purchaser *** by the county, the purchaser *** may recover from the owner the amount *** paid, with 10% interest ***." (Emphasis added.) 35 ILCS 200/21-340 (West 2014).

- 11 -

Thus, while a purchaser may recover directly from a property owner under section 21-340, that does not preclude the purchaser from seeking a recovery from the Collector. The plain language of section 21-310(d) states that the Collector is to issue a refund. The parties have failed to prove, at this point, that the Collector will ultimately be unable to pay the refunds. If that is eventually the case, the purchasers may choose to exercise their rights under section 21-340. However, that does not preclude them from exercising their rights under section 21-310(d). Section 21-340 specifically states that its remedies are "[i]n addition to all other remedies." *Id.*

¶ 54 Further, requiring the Collector to issue the refunds does not render section 21-340 meaningless. In *Joliet Stove Works v. Kiep*, 230 Ill. 550, 557-58 (1907), the supreme court noted that, while money paid at a tax sale can be recovered from the Collector, other funds paid by the tax purchaser, for the purpose of protecting the purchase, can be recovered from the owner. Accordingly, there are times when a tax purchaser's only recourse is to collect from the owner. Thus, there is a purpose for section 21-340 separate from the refunds at issue in this case. Accordingly, we hold that Cortland is the appropriate taxing body and that the Collector shall issue the petitioners' refunds from Cortland's general tax revenue.

¶ 55 For the foregoing reasons, we affirm the trial court's grant of Cortland's petition to intervene. We also affirm the trial court's determination that the Collector is not required to issue the petitioners' refunds in advance of collecting funds from the appropriate taxing body. However, we reverse the trial court's determination that the SSAs are taxing bodies and hold that Cortland is the taxing body within the meaning of section 21-310(d) of the Code.

¶ 56 III. CONCLUSION

¶ 57 The judgment of the circuit court of De Kalb County is affirmed in part and reversed in part.

¶ 58 Affirmed in part and reversed in part.